TAMASHIRO SOGI & BONNER
A Law Corporation

ADDISON D. BONNER          9163-0
TREVOR N. TAMASHIRO        9584-0
705 S. King Street, Suite 105
Honolulu, Hawaii 96813
Tel. No. (808) 492-1907
Fax No. (808) 356-1581
Email: adb@tsbhawaii.com
          tnt@tsbhawaii.com

Attorneys for Appellant
CLEARCOM, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| CLEARCOM, INC., | Case No. 1:22-CV-00428-JAO-KJM (Bankruptcy Appeal) |
|---|---|
| Appellant, | |
| | **APPELLANT CLEARCOM, INC.'S OPENING BRIEF** |
| v. | |
| HAWAIIAN TELCOM, INC., | Originating Case Information |
| Appellee. | Case No. 18-01319<br>Chapter 11<br>Hon. Robert J. Faris |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF HAWAII

**APPELLANT CLEARCOM, INC.'S OPENING BRIEF**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellant CLEARCOM, INC. is owned by Waimana Enterprises Incorporated, a Hawaii corporation. No publicly held corporation owns more than 10 percent of its stock.

DATED: Honolulu, Hawaii, March 20, 2023.

<u>/s/ Trevor N. Tamashiro</u>
ADDISON D. BONNER
TREVOR N. TAMASHIRO

Attorneys for Appellant
CLEARCOM, INC.

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................i

**TABLE OF AUTHORITIES** ......................................................... iii

**JURISDICTIONAL STATEMENT** ....................................................3

**STATEMENT OF ISSUES** ...............................................................4

**STANDARD OF REVIEW** .................................................................6

**STATEMENT OF THE CASE** ...........................................................7

**SUMMARY OF ARGUMENT** ..........................................................17

**ARGUMENT** ......................................................................................18

    I.    **This "Proceeding" is the Adjudication of the Bankruptcy Court's Final Sale Order** ..................................................................18

    II.   **The Contempt Order Threatened Sanctions and Was Not "Final"**..19

    III.  **Characterizing the Contempt Order as Final Could Result in Duplicative and/or Piecemeal Appeals** .................................20

    IV.  **The Bankruptcy Court Exceeded Its Authority By Awarding to HTI Assets that the Trustee Did Not Own** ...................................21

        A.    *The Trustee Did Not Own Clearcom's Spare Reels or License Rights* ............................................................................21

        B.    *The Trustee Did Not Own SIC's Interest in License 372* ............22

    V.   **The Bankruptcy Court Violated the Hawaii State Constitution in Transferring License 372 to HTI** ...........................................23

    VI.  **The Bankruptcy Court Committed Clear Error in Finding License 372 Transferred In Spite of the Trustee Diverging from the Required Execution Procedures with License 372** ................................25

VII.    **The Trustee Did Not Obtain SIC's Interests in License 372 and the SIC Affiliates' Commitments Regarding License 372 Were Not Enforceable by HTI**..................................................................................27

**CONCLUSION**.......................................................................................................29

# TABLE OF AUTHORITIES

Federal Cases

*Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S.Ct. 1686 (2015) ...............4, 18, 20

*In re H Granados Commnc'ns, Inc., 503 B.R. 726 (B.A.P. 9th Cir. 2013)* ......19, 20

*In re Johnson* 380 B.R. 455 (B.A.P. 6th Cir. 2007) ...................................................6

*In re Video Depot, Ltd.*, 127 F.3d 1195 (9th Cir. 1997) ...........................................6

*In re Vylene Enterprises, Inc., 968 F.2d 887 (9th Cir. 1992)* ............................5, 20

*Munson v. Gradient Res., Inc., No. 3:13-cv-01988-MO, 2014 WL 2041819 (D. Or. Apr. 29, 2014)* ..................................................................................................4, 19

*Nursery v. Hassid*, 141 S.Ct. 2063, 2073 (2021) .....................................................21

*Ritzen Group, Inc. v. Jackson Masonry, LLC, 140 S.Ct. 582 (2020)* ....................18

*Yu v. Idaho State Univ.*, 15 F.4th 1236 (9th Cir. 2021) ............................................6


State Cases

*Ditto v. McCurdy*, 102 Haw. 518, 78 P.3d 331 (2003) ..............................26


Federal Statutes

28 U.S.C. § 1334(b) ....................................................................................................4

28 U.S.C. § 158 ...................................................................................................4, 18

11 United States Code ................................................................................................4

Hawaiian Homes Commission Act § 101(b) ....................................................24, 25

Hawaiian Homes Commission Act § 207(c)(1)(A) ..................................................23

Hawaiian Homes Commission Act § 207 ........................................................23, 24

Hawaiian Homes Commission Act § 208(5) ............................................................24

Hawaiian Homes Commission Act § 212 ................................................................24

State Statutes

Haw. Rev. Stat. § 651-36 *et zeq*...........................................................................25

Haw. Rev. Stat. § 651-42 ......................................................................................26

Haw. Rev. Stat. § 425-123 ....................................................................................11


Rules

Fed. R. Bankr. P. 8002(b)(1)(B) .............................................................................3

# JURISDICTIONAL STATEMENT

This case involves as dispute between two nondebtors—Appellee HAWAIIAN TELCOM, INC. ("Appellant" or "HTI") and Apellant CLEARCOM, INC. ("Clearcom" or "Appellant")—about a matter that has no effect whatsoever on the debtor's, Paniolo Cable Company, LLC ("Paniolo"), estate. The Bankruptcy Court did not have jurisdiction to enter the orders that are the subject of this appeal. The Bankruptcy Court's justification that the court is "enforcing" its prior order is incorrect because the Bankruptcy Court's prior order did not, and could not award to HTI assets that the bankruptcy Trustee never owned.

This is an appeal by Appellant Clearcom from *Order Granting Interim Relief in Connection with Motion By Hawaiian Telcom Inc. Enforcing The Court's Sale Order* (the "Contempt Order") [Docket No. 696], the *Order Granting Final Relief in Connection with Motion by Hawaiian Telcom, Inc. Enforcing the Court's Sale Order* [Dkt. 729; Appx 0924] (the "Final Order"), and the *Order Denying Motion for Reconsideration of Findings of Fact of the Court's Order Granting Final Relief in Connection with Motion by Hawaiian Telcom, Inc. Enforcing the Court's Sale Order* [Dkt. 784; Appx 1041] (the "Reconsideration Order"). The Reconsideration Order, entered on August 17, 2022 [Dkt. 784; Appx 1041] constitutes a final order. Therefore, under Fed. R. Bankr. P. 8002(b)(1)(B), the deadline to file a notice of appeal was fourteen (14) days after August 17, 2022.

Clearcom's Notice of Appeal was timely filed on August 31, 2022 [Dkt. 803; Appx 1046]. The Contempt Order was not a final order as it is well settled that an adjudication of contempt is not a final, appealable order until sanctions have been imposed. *See, e.g., Munson v. Gradient Resources, Inc.*, 2014 WL 2041819 (D. Or. Apr. 29, 2014).

The Bankruptcy Court's jurisdiction over the Paniolo bankruptcy arises under Title 11 of the United States Code. Appellant timely filed its Notice of Appeal from the Court's Reconsideration Order on August 31, 2022. This Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1).

## STATEMENT OF ISSUES

There are seven (7) issues on appeal, and three (3) issues that the Court has requested Appellant to address in its Opening Brief. This Statement shall first address the Court's requests:

*First*, how to define the relevant proceeding before the Court.

*Second*, whether the Contempt Order actually imposed sanctions and how that impacts finality and whether the Contempt Order terminated a procedural unit separate from the remaining bankruptcy case.

*Third*, how a determination that the Contempt Order was final and appealable would still "work as a meaningful constraint on the availability of appellate review" under *Bullard v. Blue Hills Bank*, 575 U.S. 496, 504 (2015), and

"avoid having a case make two complete trips through the appellate process," *In re Vylene Enterprises, Inc.*, (9th Cir. 1992).

*Fourth*, whether the Bankruptcy Court erred in finding that the Chapter 11 Trustee obtained (and transferred to HTI) Sandwich Isles Communications' interest in License 372.

*Fifth*, whether the Bankruptcy Court violated the Hawaii State Constitution by purporting to hold that the Chapter 11 Trustee obtained (and transferred to HTI) Sandwich Isles Communications' interest in Department of Hawaiian Home Lands License 372.

*Sixth*, whether the Bankruptcy Court erred in finding that the Chapter 11 Trustee obtained (and transferred to HTI) Sandwich Isles Communications' interest in Department of Hawaiian Home Lands License 372, when the Trustee expressly confirmed (in an agreement approved by the Court) that the Trustee did not have, and had not obtained, any interest in License 372.

*Seventh*, whether the Bankruptcy Court erred in finding that the Chapter 11 Trustee obtained (and transferred to HTI) Sandwich Isles Communications' interest in Department of Hawaiian Home Lands License 372, when the Trustee failed to follow any of the procedures for execution on recorded real estate interests respecting License 372, but did follow the procedures with respect to the real estate the Trustee did intend to execute upon.

*Eighth*, whether the Bankruptcy Court exceeded its authority by awarding to HTI assets that the Trustee never owned: assets of a non-debtor company, Sandwich Isles Communications.

*Ninth*, whether the Bankruptcy Court exceeded its authority by awarding to HTI assets that the Trustee never owned: assets of a non-debtor company, Clearcom, Inc.

*Tenth*, in light of Rule 9019 Settlement Agreement ("9019 Agreement") and the Master Relationship Agreement (including Schedule 2, section 2.3) that were approved by order dated 6/4/20 and relied upon in the Rule 363 Sale Order dated 12/28/20, but were not assumed by HTI, and (a) did the Trustee obtain Sandwich Isles Communications' interests in License 372 and transfer said interests to HTI, and (b) were Waimana, Pa Makana and Clearcom's commitments in the Rule 9019 Settlement Agreement regarding their License 372 rights enforceable by HTI?

## STANDARD OF REVIEW

Findings of fact are reviewed for clear error. *See Yu v. Idaho State Univ.*, 15 F.4th 1236 (9th Cir. 2021). The questions of law are reviewed *de novo*. *In re Video Depot, Ltd.*, 127 F.3d 1195, 1197 (9th Cir. 1997). *De novo* review means that "the appellate court determines the law independently of the trial court's determination." *In re Johnson* 380 B.R. 455, 458 (B.A.P. 6th Cir. 2007).

## STATEMENT OF THE CASE

The subject of this appeal is License 372, approved by the Hawaiian
Homes Commission (the "Commission") and issued by the State of Hawaii –
Department of Hawaiian Home Lands ("DHHL") to Waimana Enterprises, Inc.
("Waimana") for development of broad band telecommunications services on the
Home Lands. License 372 states, by its terms, that it is an "exclusive" license.
Clearcom is not a debtor in bankruptcy and none of Clearcom's assets are subject
to the Bankruptcy Court's jurisdiction.

Subsequent to receiving License 372, Waimana issued partial
assignments of License 372 to its affiliates: Sandwich Isles Communications
("SIC"); Pa Makani LLC dba Sandwich Isles Wireless; Clearcom, Inc. dba
Sandwich Islands Broadband; and Paniolo Cable Company LLC ("Paniolo").
Waimana's License 372 grant states:

> NOW THEREFORE, LICENSOR, in consideration of the
> services to be provided by LICENSEE [Waimana], and the
> terms, conditions and covenants herein contained on the part of
> LICENSEE to be kept, observed and performed, hereby grants
> and issues to LICENSEE, and its legal successors and assigns,
> the [1] exclusive right and privileged to build, construct, repair,
> maintain and operate a broad band telecommunications network
> including poles, overhead and/or underground lines, appliances,
> microwave and/or other types of equipment over, across, under
> and throughout all lands under the administration and
> jurisdiction of LICENSOR, and its legal successors and assigns,
> including the right to trim and keep trimmed any vegetation,
> shrubbery, bushes or trees in the way of its lines and
> appurtenances, and [2] including also the right of entry upon the

> Easement and adjoining land of LICENSOR for the
> construction, maintenance, operation and removal of
> LICENSEE'S line and appurtenances over, across and under
> the LICENSE area.

*See* Dkt. 639-1 (Appx 0429) Emphases added.  In sum, License 372 grants: [1] a

service right to the Hawaiian Home Lands ("License 372 Service Right"); and [2]

an easement right related to work associated with provided service to the Hawaiian

Home Lands ("License 372 Easement").  At no time did either the License 372

Service Right or the License 372 Easement divested from Waimana or its

subsidiaries—Clearcom included.

Clearcom received a partial assignment of License 372 from

Waimana.  *See* Dkt. 639 (Appx 0449).  The Assignment transferred to Clearcom

"those certain rights, title and interest necessary to provide broadband services of

all types, including but not limited to the construction and operation of all

necessary broadband infrastructure, in and to" License 372.  *Id.*  In connection with

that assignment, Clearcom provides telecommunication and broadband service

throughout the State of Hawaii as part of its rights under License 372.

In 2018, a Chapter 11 proceeding, related to Paniolo, was

commenced.  Paniolo, as debtor, owned a network of submarine cables and related

equipment that provides telecommunications service to the Hawaiian Home Lands.

This network of submarine cables and related equipment (collectively, the "Paniolo

Network") were the sole assets that belonged within the Chapter 11 proceeding.

SIC, an affiliate of Paniolo, owns and operates a land-based system that connects Paniolo's submarine system to end users on islands across the State of Hawaii.

The Trustee obtained a money judgment against SIC and a writ of execution against certain specifically identified assets owned by SIC. *See* Dkt. 668-11 (Appx 0719). Although the list of assets executed upon made references to SIC's license, the execution sale did not include SIC's license nor the HHL owned by SIC or Clearcom under License 372. *See* Dkts. 668-9; 668-10; 668-13 (Appx 707 - 718, 738).

One SIC-owned parcel of real estate not located on HHL was included in the execution sale. The Trustee followed ordinary procedures for Hawaii real estate, recording the writ of execution against SIC's title. *See id.* The Trustee did not levy, execute or record against HHL, SIC's or Clearcom's license.

On April 24, 2020, as a part of the underlying Chapter 11 proceeding, Michael Katzenstein, as Trustee, negotiated with SIC the Rule 9019 Agreement, cancelling the Paniolo-SIC lease and Joint Use Agreement: "For the avoidance of doubt, the Master Relationship Agreement and the Schedule A.2 IRU shall replace the JUA and the SIC lease," (Dkt. 271; Appx 033 at paragraph G) and replacing them with a Master Relationship Agreement ("MRA") and exhibits. *See* Dkt. 668-7 (Appx 0638). SIC agreed to allow the use of its interests in SIC's license in exchange for consideration from the Trustee and the buyer of the Trustee's assets

necessary for continued, uninterrupted voice service to HHL and continued

fulfillment of burdens under License 372.

Indeed, the MRA is notable for what was not assigned. Specifically,

although the list of assets execution upon purports to include SIC's license, the

execution sale neither included SIC's license nor the real property owned by SIC

or Clearcom. Schedule 2, section 2.3 of the MRA illustrates that point:

> **2.3 Entitlements.** The Parties <u>acknowledge</u> and agree that:
> (that certain Department of Hawaiian Home Lands License
> Agreement No. 372 ("DHHL License"), together with (b) the
> easements, leases, license agreements, letters of approval,
> special area management permits, rights of way or rights of
> entry granted to SIC or an SIC Affiliate and identified on
> Exhibit B hereto (the "Entitlements") are necessary for the
> operation and maintenance of the Paniolo Network (or were
> necessary for the operation and maintenance of the Paniolo
> Network). <u>SIC hereby agrees to assign, transfer, or convey to
> Paniolo all Entitlements **(other than the DHHL License)** that
> may be their terms be so assigned or transferred and to the
> extent such assignment, transfer, or conveyance would not, in
> Paniolo's reasonable judgment, adversely affect service in the
> Hawaiian Home Lands.</u> <u>To the extent any Entitlement may not,
> by its terms, be so assigned or transferred, SIC shall (i) sublease
> or sublicense (as applicable) the Entitlements to Paniolo; or (ii)
> grant to Paniolo the broadest possible right to use the
> Entitlement.</u> For the avoidance of doubt, <u>the Parties
> acknowledge and agree that **DHHL License will not be
> assigned by SIC to Paniolo**, but that SIC shall, and hereby
> does, grant to Paniolo the full benefit and use of the DHHL
> License for the IRU Term provided Paniolo does not exercise
> its rights under such grant to impair service to HHL.</u>

*See* Dkt. 668-7 (Appx 0638) (emphases added). Thus, the Trustee did not acquire,

nor did it intend to acquire, SIC's Hawaiian Home Lands real estate. Further, not

only did the Trustee not take the steps necessary to execute on it, he signed the Rule 9019 Agreement confirming that he had not executed upon it.

The MRA continued in force for nine (9) months after which HTI stated unambiguously that it did not purchase the MRA—which the Bankruptcy Court agreed to over the objections of SIC. During the nine (9) month period when the MRA was in effect, the Trustee never claimed to have owned the license or real property owned by either Clearcom or SIC. In spite of this, however, the Trustee attempted to award to HTI assets that the Trustee did not own—License 372. The Marshal incorrectly expanded the description of "Other Related Assets" in the Notice of Execution—the Trustee conveyed to HTI this list, and was wrongfully confirmed by the Bankruptcy Court—by including:

> "—[a]ll licenses necessary to build, construct, repair, maintain and oerate the Schedule A.2 assets, **including without limitation SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands.**
>
> **--All existing and pending entitlements** (including without limitation, **SIC's interests** in memoranda of agreement, **easements**, leases, **license agreements**, letters of approval, special area management permits, rights of way or rights of interest, necessary to build, construct, repair, maintain and operate the Schedule A.2 assets."

*See* Docket 668-11 at Appx 0733. The inclusion of License 372 was done in error.

On December 16, 2020, the DHHL highlighted the error in the Trustee's position (and subsequent Bankruptcy Court approval), on by filing a

Statement of Position [Dkt. 341, Appx 0044] that indicated that HTI , if purchasing Paniolo's assets out of the Chapter 11 proceeding, would ***need to enter into a new license*** for the use of Hawaiian Home Lands upon which certain of the Paniolo assets were located, which would authorize HTI to build, construct, repair, maintain and operate the assets located on Hawaiian Home Lands. [Dkt. 341 at Appx 0047-48]. In the DHHL's words,

> "DHHL further clarifies that the new license to [HTI] is **subject to approval by the Hawaiian Homes Commission**. DHHL anticipates that the negotiation and approval process for [HTI] to acquire a new license will take several months."

*See* Dkt. 341 at Appx 0048. Stated simply, DHHL and HTI negotiating a "new license that would allow [HTI], on a long-term basis, to maintain and operate the Paniolo assets on the Hawaiian Home Lands" is indication that ***License 372 was not owned by the Trustee***, and the interest in License 372 could not and should not have been transferred by the Bankruptcy Court. *See* Dkt. 432 at Appx 52.

On November 19, 2021, the Bankruptcy Court entered its *Order Granting in part and Denying in Part Hawaiian Telcom's Motion to Enforce Sale Order* [Dkt. 537, Appx 0084] (the "Sale Order"). The Sale Order notes that, as of December 2020, HTI bought certain assets from the Chapter 11 Trustee from the Paniolo Cable Company proceeding (the "363 Sale"). As part of the 363 Sale, HTI claimed that it took possession of various "Transferred Assets" under an Asset Purchase Agreement ("APA"). HTI's position was that the transfer of assets under

the APA purported to include: information, spare parts, and equipment. *See* Dkt. 537 at Appx 0086. The Bankruptcy Court granted HTI's motion with respect to HTI's claim for the turnover of spare parts and equipment related to Paniolo's submarine system. The Bankruptcy Court took the position that these items are "undoubtedly 'Transferred Assets' under the [363] Sale Order" and granted HTI's claim for the turnover of those items on that basis. Dkt. 537 at Appx 0094.

On March 29, 2022, HTI, in pursuit of its believed rights under the 363 Sale, moved the bankruptcy court for interim and final relief enforcing the Bankruptcy Court's 363 Sale Order (the "Contempt Motion"). [Dkt. 637 Appx 0097]. The Contempt Motion further requested that the Bankruptcy Court to compel the turnover of spare fiber cable reels (the "Spare Reels") that HTI believed it purchased under the 363 Sale. *See* Dkt. 637 Appx 0097.

The problem with HTI's position—as articulated by SIC in its Objection to the Contempt Motion—was that the Spare Reels sought by HTI were never owned by Paniolo or SIC. *See* Dkt. 671 Appx 0780. Rather, the Spare Reels were owned by Clearcom. *Id.* Following a hearing on April 18, 2022, the Bankruptcy Court granted the Contempt Motion, and issued the Contempt Order on April 22, 2022. *See* Dkt. 699 Appx 0822. The Contempt Order, which is the subject of Appellee's Motion to Dismiss, was notably not a final and appealable order as it merely threatened a daily monetary sanction which was intended to

compel compliance with the Bankruptcy Court's order to turn over the Spare Reels. *Id.* Appellee's position—which is incorrect—is that the Contempt Order "wholly determined . . . the question of ownership and transfer of the Spare Reels." *See* Dkt. 6 [1:22-cv-00428-LEK-KJM]. To the contrary, Clearcom objects to the Bankruptcy Court erroneously awarding to HTI assets that the Trustee never owned: the Spare Reels, which are the assets of non-debtor Clearcom.

On April 25, 2022, subsequent to the entry of the Contempt Order, the undersigned filed a Letter of Compliance on behalf of Appellant. *See* Dkt. 705 Appx 0823. The Letter of Compliance further supported Appellant's position, initially raised by SIC in its Objection to the Contempt Motion, that appellant owns the Spare Reels. *Id.* Notably, no sanction was imposed by the Bankruptcy Court at that time, or at any date subsequent. Furthermore, Appellant appealed the Contempt Order as the Bankruptcy Court had no jurisdiction to compel Appellant—not a party to the underlying bankruptcy proceeding—to turn over the Spare Reels. In spite of this position, however, Appellant complied with the turnover of the Spare Reels to avoid the possibility of a sanction.

On May 2, 2022, SIC filed its Statement of Objection to the Final Relief Requested by HTI. *See* Dkt. 713 Appx 0824. Appellant filed a Joinder to SIC's Statement of Objections. *See* Dkt. 720 Appx 0885. SIC and Appellant both took the position that DHHL and the Commission could not issue a license to HTI

so long as License 372 was valid, or unless SIC agreed to such issuance. *See* Dkt.

713 at Appx 0835. At present, HTI neither has possession of License 372 nor an

alternative license that would allow it to operate on the Hawaiian Home Lands.

In spite of Clearcom and SIC's Statements of Objection, on May 17,

2022, the Bankruptcy Court entered its *Order Granting Final Relief in Connection*

*with Motion by Hawaiian Telcom Enforcing Court's Sale Order* (the "Final

Order"). *See* Dkt. 729 Appx 0924. The Final Order erroneously found numerous

items. Specific erroneous findings of fact include:

> F. Through the Marshal Sale (defined at ECF No. 637-1 at 4 of
> 59) and the 363 Sale (*id.*), [HTI] has properly acquired the
> entirety of the Paniolo Buildings (defined at ECF No. 637 at 4-
> 5 of 8), and thus now holds exclusive control and ownership
> over, as well as rights of access to, the entirety of the Paniolo
> Buildings.

> G. Through the Marshal Sale and the 363 Sale, [HTI] has
> properly acquired the assets that permit operation of the Paniolo
> Network (defined at ECF No. 637-1 at 11 of 59), including,
> without limitation, full rights of access to the Paniolo Premises,
> including those certain portions of the 372 License . . .
> pertaining to the Paniolo Network and/or the Paniolo Premises
> that were formerly held by SIC. SIC, Waimana Enterprises,
> Inc., Pa Makani LLC, Clearcom, Inc., all affiliates thereof, as
> well as all members of the Hee family and all other individuals
> who have authority of *de facto* control over any of these entities
> (collectively, the "SIC Parties") are thus prohibited from
> charging [HTI] any fees or accessing or using any assets that
> permit operation of the Paniolo Network, including, without
> limitation, the Paniolo Buildings and Paniolo Premises, and
> [HTI] is not required to pay any such fees.

H. Through the Marshal Sale and the 363 Sale, including HTI's acquisition of the perimeter fences surrounding the paniolo Premises and its acquisition of all keys relating to the Paniolo Buildings and Paniolo Premises, [HTI] has acquired the exclusive ability to control and maintain security for and over the entirety of the Paniolo Network, the Paniolo Buildings, and the Paniolo Premises.

*Id.* at Appx 0926-27.

On May 27, 2022, Waimana filed a Motion for Reconsideration of the Final Order. *See* Dkt. 740 Appx 0932. Appellant joined in the Motion for Reconsideration. *See* Dkt. 745 Appx 0940. Waimana sought reconsideration on the Bankruptcy Court's Findings of Fact F, G and H.

On August 17, 2022, the Bankruptcy Court entered its *Order Denying Motion for Reconsideration of Findings of Fact of the Court's Order Granting Final Relief in Connection with Motion by Hawaiian Telcom, Inc. Enforcing the Court's Sale Order* (the "Reconsideration Order"). *See* Dkt. 784 Appx 1041.

On August 31, 2022, Appellant timely appealed three separate orders: (1) the Contempt Order; (2) the Final Order; and (3) the Reconsideration Order. More specifically, this appeal challenges the Bankruptcy Court's holdings that: (1) the Spare Reels must be turned over to HTI when neither Clearcom nor its assets were subject to the Bankruptcy Court's jurisdiction; and (2) License 372 and the real property associated with it were transferred to HTI when the Trustee did not ever own License 372.

# SUMMARY OF ARGUMENT

On the issues raised by this Court, Appellant asserts that the appeal is timely because the Contempt Order was merely an interlocutory order—the appeal of which would likely have run afoul of the "finality" standards articulated by various courts of appeals. Clearcom timely filed its appeal of the three (3) Bankruptcy Court orders following the close of a procedural unit separate from the remaining bankruptcy proceeding.

Next, neither Clearcom nor its assets were in bankruptcy. At no point did the Trustee acquire Clearcom's assets. Stated another way, the Bankruptcy Court overreached by ordering the turnover of the Spare Reels. Nevertheless, to avoid the imposition of sanctions, Clearcom complied with the Bankruptcy Court's erroneous Contempt Order and turned over the Spare Reels to HTI.

The larger issues on appeal arise from the issue of the Trustee attempting to sell SIC's interest in License 372. At no point did the Trustee properly divest License 372—a document which was neither cancelled by the DHHL, nor executed upon and properly sold to HTI. The Bankruptcy Court committed clear error when it found that the Trustee obtained and transferred to HTI SIC's interest in License 372. This Opening Brief shall discuss the various points of evidence that show: (1) the Trustee did not obtain SIC's interest in

License 372; and (2) the Bankruptcy Court ignored facts and law by allowing the transfer of SIC's interest in License 372—as well as other assets—to HTI.

## **ARGUMENT**

### I. **This "Proceeding" is the Adjudication of the Bankruptcy Court's Final Sale Order**

Appellee, through its Motion to Dismiss [Dkt. 6 1:22-cv-00428-LEK-KJM], has sought to characterize the instant proceeding as a tardy appeal of the Bankruptcy Court's Contempt Order. Not so. An examination of the relevant case law makes clear that the Contempt Order was an interlocutory order, while the Reconsideration Order was a final order under 28 U.S.C. §158(a).

The Court specifically requested that Appellant address *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582 (2020) to assist in defining the instant proceeding. The central question to define a proceeding is whether an order leaves the "parties' rights and obligations . . . unsettled." *Ritzen* 140 S.Ct. at 588 (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S.Ct. 1686 (2015)). If the rights and obligations *are* unsettled, the order is not final. *Id.* The converse is also true. This proceeding is an appeal from a final order—the implications of which affect the Contempt Order, which was interlocutory and thus timely appealed.

Appellant anticipates that Appellee will characterize the Contempt Order in the same light as *Ritzen* described—and dismissed—the breach of contract claim. The Contempt Order, however, was merely an order threatening to

impose a sanction upon SIC for not turning over the Spare Reels. The threat of sanctions in the context of a Contempt Order is not a final order. *See Munson v. Gradient Res., Inc.*, No. 3:13-cv-01988-MO, 2014 WL 2041819 (D. Or. Apr. 29, 2014). Furthermore, the true owner of the Spare Reels is Appellant, who was not a party to the underlying bankruptcy proceeding. Appellant has, and continues to object to the jurisdiction of the Bankruptcy Court because it is not in bankruptcy. Nevertheless, the instant proceeding is an appeal from the Reconsideration Order, which also encapsulates the Contempt Order that forced Appellant's turnover of the Spare Reels under the threat of sanctions.

## II.    The Contempt Order Threatened Sanctions and Was Not "Final"

The Contempt Order did not actually impose sanctions on either SIC or Appellant. Rather, and like in *Munson*, the Court merely threatened sanctions at a daily rate to "secure compliance with [the] Contempt Order [and t]he award of any monetary sanction is subject to further order of the Court" *See* Docket No. 700 at page 5. Because no monetary sanctioned was imposed on either SIC or Appellant, the Contempt Order was interlocutory in nature, and no procedural unit separate from the remaining bankruptcy case was terminated. *See Munson* No. 3:13-CV-01988-MO, 2014 WL 2041819, at *2-3 (D. Or. Apr. 29, 2014). The Bankruptcy Court did not award sanctions, rendering the Contempt Order not yet final or subject to appeal. *Id.*; *contra In re H Granados Commnc'ns, Inc.*, 503 B.R.

726, 731-32 (B.A.P. 9th Cir. 2013). Therefore, the time to appeal the Contempt Order was not ripe until the resolution of the Reconsideration Order—an order that did "dispose of discrete disputes within the larger bankruptcy case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S.Ct. 1686 (2015) (quotation omitted).

## III.   Characterizing the Contempt Order as Final Could Result in Duplicative and/or Piecemeal Appeals

Clearcom's response to this Court's request to brief how a determination that the Contempt Order was final and appealable would work in light of the controlling case law is simply: "it would not work." From Clearcom's perspective, the turnover of the Spare Reels as a "final" order runs the risk of being appealed a second time—via appeal of the Final Order and Reconsideration Order.

The Ninth Circuit Court of Appeals in *In re Vylene Enterprises, Inc.*, 968 F.2d 887 (9th Cir. 1992) articulated that the effect of an appellate court refusing appeals of interlocutory orders in a bankruptcy proceeding reduces the likelihood that the appellate court would face an "inadequate record" on appeal and would further "avoid piecemeal appeals." *Id.* at 895. Appellee has stated, in its Motion to Consolidate [Dkt. 5 in Case No. 1-22-cv-00426-JAO-KJM], that the Bankruptcy Court denied the Initial Motion to Enforce "on the grounds that the existing record was insufficient for the court to make certain determinations." *See id.* at 5. On that basis alone, Clearcom urges this Court to determine that the appeal of the Contempt Order is timely.

## IV. The Bankruptcy Court Exceeded Its Authority by Awarding to HTI Assets that the Trustee Did Not Own

### A. *The Trustee Did Not Own Clearcom's Spare Reels or License Rights*

The Trustee claimed to have sold to HTI the assets of non-debtor companies SIC and Clearcom.  This was done in error.

To start, Clearcom is not a debtor in bankruptcy.  The Bankruptcy Court has no "special bankruptcy powers" related to Clearcom's assets.  It is obvious that the Trustee could not sell what the Trustee never owned.  In the context of Clearcom, at no time did it or its assets—the Spare Reels—come to be owned by the Trustee.  Therefore, it was error for the Bankruptcy Court to order that non-debtor Appellant turnover the Spare Reels to HTI.

Moreover, the Bankruptcy Court's holding in the Final Order and Reconsideration Order allow HTI to use the acquired property for all types of services constitutes an unjust taking of Clearcom's license and property rights for data.  This is an unconstitutional taking of SIC and Clearcom's property.[1]  The Bankruptcy Court erred in confirming the Trustee's overreach with respect to Clearcom's property as a non-debtor whose assets were not the subject of the Paniolo Chapter 11 bankruptcy proceeding.

---

[1] After the Bankruptcy Court held that HTI did not purchase the MRA, HTI should not be permitted to utilize Clearcom's license and property rights without compensation.  In *Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 2073 (2021), the Court, in overturning the Ninth Circuit's decision allowing just a temporary use of property without compensation and over the objection of the land owner was an unconstitutional taking without regard to how that land was owned..

B.    ***The Trustee Did Not Own SIC's Interest in License 372***

The same analysis applies in the context of non-debtor SIC.  SIC was not a debtor in bankruptcy, and the Bankruptcy Court had no jurisdiction over SIC's assets.  The Bankruptcy Court's error with regard to SIC has been discussed throughout this Opening Brief.  In short, the Bankruptcy Court exceeded its authority by awarding License 372 to HTI because the Trustee never owned it.

The Rule 9019 Agreement states that SIC's interest in License 372 was never conveyed.  Specifically, the Rule 9019 Agreement effective as of March 6, 2020, and by Order entered on June 4, 2020 [*see* Dkt. 271 Appx 28], the Bankruptcy Court approved the Rule 9019 Agreement between Trustee, Paniolo Creditors, SIC, and SIC Affiliates (Waimana, Pa Makani and Clearcom), which referenced, adopted and approved the MRA.  *Id.*  Schedule 2, section 2.3 of the MRA is clear that SIC did not convey to Paniolo—and therefore, ***excluded from the Trustee***—License 372.  Thus, even if HTI assumed the MRA, at no point did the Trustee obtain "SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands" which is erroneously listed in Schedule A-2 of the MRA.

To address an issue on appeal, the Bankruptcy Court erred in finding that the Trustee conveyed SIC's interest in License 372 when the Trustee confirmed that it did not have, and had not obtained any interest in License 372.

The Trustee's acknowledgement came in the form of Section 2, section 2.3 of the MRA, in spite of the wording noted in Schedule A-2, which purports to transfer License 372. The DHHL confirmed to the Bankruptcy Court that HTI needed its own license to lawfully operate on the Hawaiian Home Lands. *See* Dkts. 341 and 432 (Appx's 44 & 49). The obvious implication of these dual confirmations is that the Trustee did not obtain License 372, and the Bankruptcy Court's finding that License 372 was transferred to HTI was error.

## V. The Bankruptcy Court Violated the Hawaii State Constitution in Transferring License 372 to HTI

The Bankruptcy Court exceeded its reach by divesting License 372 from Waimana, SIC and Clearcom. The License conveys an exclusive interest in real property and is issued pursuant to Section 207(c)(1)(A) of the Hawaiian Homes Commission Act ("HHCA"), which authorizes the Commission to grant licenses, for lots, as easements. The license expressly states that it is exclusive.

The HHCA contains only two ways that the Commission grants real property rights to use Hawaiian Home Lands, by lease or license. Section 207 of the HHCA provides, in pertinent part:

> (c)(1) The department is authorized to grant licenses as easements for railroads, telephone lines, electric power and light lines, gas mains, and the like.

> (B) …other mercantile establishments (all of which shall be owned by native Hawaiians or by organizations formed and controlled by native Hawaiians.

> (2) The department is also authorized to grant licenses to the
> United States …

*See* HHCA 207.  Next, HHCA Section 208(5) provides that a lease of Hawaiian

Home Lands granted under Section 207 ***cannot*** be levied and executed upon.

Applied here, License 372 is an interest in land granted under Section

207, and Clearcom submits that Section 208's prohibition on "court process" to

dispossess native Hawaiians of Hawaiian Home Lands applies equally, regardless

of whether the interests is obtained by license or lease.

The use of the word "lease" in Section 208 was not intended to

exclude licenses.  This is consistent with the rest of the HHCA.  For example,

Section 212 provides that the rent may be a nominal amount, where there is:

> "leasing of Hawaiian home lands by the board to a public utility
> or other governmental agency where such use directly benefits
> the department of Hawaiian home lands or the homestead
> lessees."

Obviously, although the statutory language refers to "leasing" it is equally

applicable to licensing to a public utility—as is the case here.  This interpretation is

necessary in order to be consistent with the purposes of the Act as set forth in

HHCA Section 101(b):

> (1) Establishing a permanent land base for the benefit and
> use of native Hawaiians upon which they may live, farm,
> ranch, and otherwise **engage in commercial, or
> industrial or any other activities** as authorized by this
> Act

(2) … assuring long-term tenancy to **beneficiaries of this
Act and their successors**

(3) **Preventing alienation** of the fee title to the lands set
aside under this Act so that these lands will always be
held in trust for continued use by native Hawaiians in
perpetuity

(emphases added).  The Bankruptcy Court's ruling violated the purposes of the

HHCA by transferring for free HHL from a beneficiary of the HHCA to a non-

beneficiary, in perpetuity, free and clear of the requirements and restrictions of

License 372.   Under the HHCA, License 372 could not be levied nor executed

upon and the bankruptcy court erred in holding to the contrary.

## VI.     The Bankruptcy Court Committed Clear Error in Finding License 372 Transferred In Spite of the Trustee Diverging from the Required Execution Procedures with License 372

It is clear error that the Bankruptcy Court allowed the Trustee to run

afoul of the levy and execution statutory procedures with respect to real estate

interests related to License 372.  As is clear from the above, License 372 includes a

real property component.  Simply stated, when the Bankruptcy Court ruled that the

Trustee obtained (and subsequently transferred to HTI) SIC's interest in License

372 the Bankruptcy Court committed error under Hawaii law.

In the underlying bankruptcy proceeding, certain assets of SIC were

the subject of an execution sale conducted under Hawaii law (Haw. Rev. Stat. §

651-36 *et seq.*).  The process is called "levy **and** execution."  The officer (in this

case, a Marshal) can only sell what he has properly levied upon in accordance with

Hawaii law. The procedure for levy is articulated in Haw. Rev. Stat. § 651-42,

which requires that:

> Every levy by an officer, in pursuance of a writ of execution
> issued by any court or judge, shall be made by taking the
> property levied upon **into the officer's possession, care, and
> guardianship**, and at the officer's option, by removal of the
> same to some place of security. The officer shall make an
> **inventory of the property levied** upon.

The requirement of levy before execution is express in the law.

> "A levy of a writ of execution consists of the acts by which an
> officer sets apart and appropriates, for the purpose of satisfying
> the command of the writ of execution, a part or the whole of the
> judgment debtor's property."

*Ditto v. McCurdy*, 102 Haw. 518, 522, 78 P.3d 331, 335 (2003).

This process ensures that there is an unambiguous record of what is

being seized and sold by the officer. A general statement of "everything in your

possession" is insufficient to accomplish an effective levy and execution;

particularly where, as in the underlying bankruptcy, the Trustee quite specifically

did not want to levy and execute on all of SIC's assets.

In the underlying bankruptcy proceeding, the Trustee levied and

executed on real property in Mililani, on the island of Oahu, bearing Tax Map Key

number (1) 9-5-2-3, and Transfer Certificate of Title number 600,112, which was

owned by SIC. *See* Dkt. 668-9 (Appx 707). That parcel was the only real property

that the Marshal had levied and executed upon, and thus was the only real property

held by the Trustee.  To be clear, because the Marshal did not levy and execute

upon License 372, then it is a legal impossibility—at least under Hawaii law—that

License 372 was acquired by the Trustee.  It follows that License 372 could not

have been sold to HTI.  Thus, the Bankruptcy Court's finding that License 372 was

transferred to HTI was done in error.

**VII.    The Trustee Did Not Obtain SIC's Interests in License 372 and the SIC Affiliates' Commitments Regarding License 372 Were Not Enforceable by HTI**

The Rule 9019 Agreement and the MRA that the Bankruptcy Court

approved, but was not assumed by HTI creates uncertainties on two fronts.  First,

Appellant's position is that the Trustee did not obtain SIC's interests in License

372, and therefore did not transfer said interests to HTI.  Second, the SIC

Affiliates' (Waimana, Pa Makana and Clearcom) commitments in the 9019

Agreement related to their License 372 rights cannot be enforced by HTI.

Indicative of the error in the Bankruptcy Court's ruling is the fact that

Paniolo's property was allowed to be located on Hawaiian Home Lands only

because of a Joint Use Agreement ("JUA") between SIC and Paniolo.  *See* Dkt.

668-7 (Appx 638).  Nothing other than the Joint Use Agreement granted Paniolo

any rights in the Hawaiian Home Lands.  The Trustee, however, terminated the

Joint Use Agreement and replaced it with the Master Relationship Agreement, a

Lease and an Indefeasible Right to Use ("IRU")—all of which were approved by the Bankruptcy Court in light of the Trustee's representation to the Court. *See* Dkt. 668 at Appx 573. The 9019 Agreement made clear that the JUA was replaced:

> The Parties agree that the **replacement of the SIC Lease and of the JUA as set forth in the Master Relationship Agreement and** provided herein, and a sale of substantially all of Paniolo Cable's assets free and clear of all liens and encumbrances (the "Paniolo 363 Sale") are in their best interests and that of their constituencies . . . .

> For the avoidance of doubt, **the Master Relationship Agreement and the Schedule 1.2 IRU shall replace the JUA and the SIC lease** . . . .

The JUA had been necessary to address the fact that License 372 was a Beneficiary Benefit License, which must only be used to benefit Hawaiians on the Hawaiian Home Lands. Similarly, the MRA addressed the same requirement by providing a free lease for the life of the undersea cable for the exclusive service of customers on Hawaiian Home Lands.

The Bankruptcy Court's error was allowing Appellee to benefit from the MRA and its schedules when it was clearly not a party to the MRA. Specifically, Appellee stated that the MRA, Lease and IRU were:

> Solely "Assignable Contracts" which means they were contracts that could have been assigned by the Trustee to [HTI] at [HTI's sole election . . . . [HTI], **however, did not elect to designate any of the SIC agreements as agreements to be assigned by the trustee to [HTI]**

Based on HTI's election, it is clear that it received no land rights through the bankruptcy proceeding. Because Appellee declined to assume the MRA—which would have provided rights to use License 372—the Bankruptcy Court erred in transferring SIC's interests in License 372 to Appellee.

Further, HTI cannot enforce Clearcom, Waimana or Pa Makana's commitments in the Rule 9019 Agreement to provide access to the Transferred Assets and Equipment because those commitments were made in reliance on the Trustee entering into the MRA *and* committing that the assignor would be bound by the MRA, which did not happen. At present, it is unsettled regarding whether Clearcom, Waimana and Pa Makana are bound by commitments made in the settlement agreement that HTI did not assume.

## CONCLUSION

First, Clearcom asks that this court reverse the Contempt Order.

Second, the Bankruptcy Court had no basis to hold that HTI owns License 372. The Trustee never owned License 372, so he could not have transferred it to HTI. Clearcom asks that this Court reverse the Final Order and Reconsideration Order.

\\

\\

DATED:  Honolulu, Hawaii, March 20, 2023.

/s/ Trevor N. Tamashiro
ADDISON D. BONNER
TREVOR N. TAMASHIRO

Attorneys for Appellant
CLEARCOM, INC.

## CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 8015

I hereby certify that the Microsoft Word Count shows that this brief (exclusive of the case caption, table of contents, table of authorities and this certificate of counsel) contains 6,738 words.

DATED:  Honolulu, Hawaii, March 20, 2023.

/s/ Trevor N. Tamashiro
ADDISON D. BONNER
TREVOR N. TAMASHIRO

Attorneys for Appellant
CLEARCOM, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Hawaii by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED:  Honolulu, Hawaii, March 20, 2023.

/s/ Trevor N. Tamashiro
ADDISON D. BONNER
TREVOR N. TAMASHIRO

Attorneys for Appellant
CLEARCOM, INC.