This case addresses the appeal of (1) the *Order Granting Hawaiian Telcom Inc.'s Motion for Order Directing Sandwich Isles Communications, Inc. to Show Cause As to Why It Should Not Be Held in Contempt* (the "<u>Contempt Order</u>");[1] (2) the *Order Granting Final Relief in Connection with Motion by Hawaiian Telcom, Inc. Enforcing the Court's Sale Order* (the "<u>Final Enforcement Order</u>"); and (3) the *Order Denying Waimana Enterprises Inc.'s Motion for Reconsideration of Findings of Fact* in the Final Enforcement Order (the "<u>Reconsideration Order</u>").[2] These orders were entered at ECF 700, 729, and 784, respectively, of the bankruptcy case of Paniolo Cable Company, LLC ("<u>Paniolo</u>"), Bankr. No. 18-01319 (the "<u>Paniolo Bankruptcy</u>").[3]

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction to enter the appealed orders under 28 U.S.C. § 1334. The sale of the Debtor's assets constituted a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(a), (n), and (o), and the enforcement and interpretation of orders issued in core proceedings are also considered core

---

[1] Clearcom's opening brief, at page 1, states that its appeal is of the *Order Granting Interim Relief in Connection with Motion By Hawaiian Telcom Inc. Enforcing the Court's Sale Order* (Bankr. ECF 696), not the Contempt Order. This appears to be in error, as Clearcom's Notice of Appeal refers to, and attaches a copy of, the Contempt Order. *See* ECF 1 at pdf pp. 2, 4, 8-35.

[2] Though the Contempt Order is only appealed in the present case, the Final Enforcement Order and the Reconsideration Order have been appealed to this Court in three separate actions by related parties: Case Nos. 22-426, 22-427, and 22-428. These appeals are also linked to three additional appeals by related parties in this Court at Case Nos. 22-434, 22-435, and 22-441. A consolidated summary timeline of the factual and procedural history underlying all six interrelated appeals is attached hereto as **<u>Exhibit A</u>**.

[3] All citations herein listed as "Bankr. ECF" are citations to the Paniolo Bankruptcy docket.

proceedings within the bankruptcy court's jurisdiction. *See, e.g., Travelers Indem. Co. v. Baile*y, 557 U.S. 137, 153-55 (2009) (holding that the "bankruptcy court plainly had jurisdiction to interpret and enforce its own prior orders . . . ."). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

The Final Enforcement Order was entered on May 17, 2022. On May 31, 2022, Appellant Clearcom, Inc. ("Clearcom") joined into a motion by its affiliate Waimana Enterprises Inc. ("Waimana") that sought reconsideration of the Final Enforcement Order. The resulting Reconsideration Order was entered on August 17, 2022, and Clearcom filed this appeal on August 31, 2022.

## STATEMENT OF THE CASE

In connection with the Final Enforcement Order and the Reconsideration Order, Appellee Hawaiian Telcom, Inc. ("HTI") incorporates by reference the statements of the case it provided in its simultaneously filed opposition briefs at Case No. 22-426, ECF 35 and Case No. 22-427, ECF 23, given that those appeals of also of the same two orders.[4]

In connection with the Contempt Order, HTI supplements the above-referenced statements of the case with the following factual and procedural history:

*I.    The Initial Motion to Enforce*

As indicated in HTI's statement filed in the pending SIC appeal, after the

---

[4] All capitalized terms used but not defined herein hold the meanings ascribed to them in the referenced statements.

closing of the 363 Sale, the SIC Parties sought to collaterally attack the sales approved by the Bankruptcy Court through "self-help," including by refusing to turn over assets the Trustee and HTI had purchased. *See, e.g.,* Bankr. ECF 425. HTI thus filed an initial motion seeking to enforce the 363 Sale Order on October 2, 2021 (the "Initial Motion to Enforce") which sought delivery by SIC to HTI of certain information, spare parts, and equipment, and the removal of certain SIC assets from buildings purchased by HTI through the 363 Sale. Bankr. ECF 459. The Bankruptcy Court granted the Initial Motion to Enforce with respect to HTI's request for the turnover of certain spare parts and equipment, but denied the remainder without prejudice in an order dated November 19, 2021 (the "Initial Enforcement Order"). Bankr. ECF 537.

In particular, the Initial Enforcement Order confirmed that certain "spare parts and equipment" associated with the Paniolo Network "undoubtedly" constituted "Transferred Assets" under the 363 Sale Order. *Id.* at 11. Accordingly, the request for SIC's turnover of those specific assets to HTI was granted through the Initial Enforcement Order. *Id.*

The Bankruptcy Court subsequently entered a judgment, on December 6, 2021, in connection with the Initial Enforcement Order. Bankr. ECF 559 (the "Initial Enforcement Judgment"). The Initial Enforcement Judgment ordered Sandwich Isles Communications, Inc. to "immediately turn over to [HTI] the crate

with the subsea spare splice kits, **spare fiber cable reels**, all spare equipment and cards corresponding to the Paniolo Fujitsu equipment, any tools and test equipment used to support the Paniolo Network, and any additional spare equipment not yet disclosed to [HTI]." *Id.* at 2 (emphasis added).

II.     *The Contempt Motion*

Despite the Initial Enforcement Judgment, and in violation of its terms, SIC continued its refusal to turn over certain spare fiber cable reels (the "Spare Reels").[5]  As a result, HTI filed a *Motion for Order Directing Sandwich Isles Communications, Inc. to Show Cause as to Why It Should Not Be Held in Contempt for Failure to Comply with the Court's Order Granting in Part and Denying in Part Hawaiian Telcom's Motion to Enforce Sale Order* (the "Contempt Motion") on March 29, 2022.  Bankr. ECF 634.  In the Contempt Motion, HTI described and documented nine specific Spare Reels still in SIC's inventory which SIC had not turned over.  *Id.,* App'x 1.  As described in the Contempt Motion, the Spare Reels are of significant value to the Paniolo Network, as the fibers in the Spare Reels have a long manufacturing lead time, are expensive, are engineered specifically for long haul optical transmission, and were necessary to perform permanent repairs on the Paniolo Network to prevent signal losses and outages for customers.  Bankr. ECF 635 (declaration filed in support of Contempt Motion) at

---

[5] SIC had instead demanded that HTI make SIC an offer to purchase the Spare Reels.  *See* Bankr. ECF 635 at ¶ 8.

¶¶ 5-6, 18-20.  In other words, the Spare Reels had been an essential part of the assets purchased by HTI in the 363 Sale, to ensure the continued operation of the Paniolo Network.

In its opposition to the Contempt Motion, SIC represented to the Bankruptcy Court, for the first time, that the Spare Reels did not belong to them, but rather to SIC's commonly-controlled affiliate Clearcom.  Bankr. ECF 671.  This claim of purported ownership by Clearcom had not been raised by any of the SIC Parties at any time during the parties' prior briefings and arguments in connection with the motion to quash the U.S. Marshal's levy and execution of the Marshal Sale Assets, the Marshal Sale itself, the 363 Sale, or the Initial Motion to Enforce.

This purported claim of ownership by Clearcom also directly contradicted SIC's original demand, on September 29, 2021, that HTI make SIC an offer to purchase the Spare Reels.  *See supra*, n. 3.  *See also* ECF 679, Exh. 1.  When SIC issued this original demand to HTI, it had attached an invoice reflecting SIC's original purchase of the Spare Reels.  *Id.*  This invoice listed SIC under the "Bill To:", "Sold To:" and "Ship To:" sections of the invoice; the invoice did not mention Clearcom.  *Id.*

After assessing the evidence presented and weighing the credibility of the declarants, the Bankruptcy Court ruled as follows:

> "And it seems to me that the position of Sandwich Isles is that another affiliate Clear-Com owned those spare reels. That's never been

inserted, to date, in this case. Nobody has ever raised that before . . . .
I think it's correct to point out that the [SIC] declaration isn't under
penalty of perjury and, therefore, couldn't be considered. But even if
it were, it's really not believable. There's no reason why Clear-Com
would own this stuff. There's plenty of evidence that it belongs to
Sandwich Isles, probably most persuasively the billing and shipping
records that shows it was purchased and consigned to Sandwich Isles.
**And it's a little bit too convenient that all of a sudden Clear-Com
claims an interest in it at this late date.** It's also clear from the
evidence that this fiber was meant for this [Paniolo] network. So I
don't think there's any legitimate question of fact that those reels are
covered. I'll grant the motion for contempt."

Tr. Hr'g (April 18, 2022) at 9:23-10:1 and 25:15-26:3 (emphasis added).

The Contempt Order was thus entered by the Bankruptcy Court on April 22,
2022, holding that SIC was to turn the Spare Reels over to HTI no later than April
25, 2022. *See* Bankr. ECF 700 at ¶ 3. The order further provided that a daily
monetary sanction, in the sum of $5,000, would be imposed on SIC from April 26,
2022 until such time that SIC turned over the Spare Reels, though such award
would be "subject to further order of the [Bankruptcy] Court". *Id.* ¶ 5. Three days
later, on April 25, 2022, Clearcom filed a letter to the Bankruptcy Court (the
"Clearcom Letter") re-asserting that it, not SIC, owned the Spare Reels. Bankr.
ECF 705. This letter informed to the Bankruptcy Court that Clearcom had turned
over the Spare Reels to HTI, but it was doing so only "under the compulsion of the
[Contempt] Order, without prejudice to and reserving all rights to assert its claims
to ownership in the future." *Id.* Prior to this letter, Clearcom had not filed an
objection to the Contempt Motion or the Initial Motion to Enforce.

HTI had filed its Main Motion to Enforce on the same day it filed the Contempt Motion. The Main Motion to Enforce sought confirmation that certain other assets were purchased by HTI as part of the 363 Sale – most notably, SIC's interest in License 372. The primary purpose of the Main Motion to Enforce was to prevent the SIC Parties from barring HTI's access to certain buildings and premises it had purchased – the SIC Parties had been engaging in brazen collateral attacks of the Bankruptcy Court's Sale Orders by replacing HTI's locks, destroying HTI's property, and otherwise physically barring HTI's access to those buildings and premises. The Bankruptcy Court granted the Main Motion to Enforce and issued the Final Enforcement Order, confirming that its prior Sale Orders had transferred SIC's interest in License 372 first to the Trustee and then to HTI. Waimana filed a motion to reconsider the Main Motion to Enforce, which was denied by the Bankruptcy Court through the Reconsideration Order.

The Spare Reels are not addressed, in any way, in either the Main Motion to Enforce, the Final Enforcement Order, the reconsideration motion, or the Reconsideration Order.

## STANDARD OF REVIEW

The Final Enforcement Order and the Contempt Order are orders addressing the Bankruptcy Court's interpretation of its own prior orders. A court's interpretation of its own orders are accorded "substantial deference" and will not

be overturned unless the reviewing court is convinced it amounts to an abuse of discretion. *In re Wallace,* 490 B.R. 898, 906 (B.A.P. 9th Cir. 2013); *In re USA Com. Mortg. Co.,* 452 F. App'x 715, 720 (9th Cir. 2011). Similarly, in connection with the appeal of the Reconsideration Order, a denial of a motion for reconsideration is reviewed for an abuse of discretion. *In re Donovan,* 871 F.2d 807, 808 (9th Cir. 1989); *In re Weiner*, 161 F.3d 1216, 1217 (9th Cir. 1998); *In re Cerchion*e, 414 B.R. 540, 545 (B.A.P. 9th Cir. 2009).

## SUMMARY OF ARGUMENT

Clearcom seeks to overturn the Contempt Order, asserting that the Bankruptcy Court overreached by ordering the turnover of what it claims were Clearcom's assets – the Spare Reels. The Spare Reels, however, were found by the Bankruptcy Court to have been owned by SIC, not Clearcom, after briefing, submission of evidence, and oral argument by both parties. The Bankruptcy Court, having determined that the Spare Reels were owned by SIC, and having confirmed that the Spare Reels were acquired by the Trustee in the Marshal Sale and purchased by HTI through the 363 Sale, thus ordered SIC to turn over the Spare Reels to HTI.

Clearcom cannot validly challenge the Bankruptcy Court's factual findings by merely repeating, at the appellate level, that these assets were owned by Clearcom. Clearcom has not presented any admissible evidence, much less any

credible evidence, which reflects its ownership, nor has it shown that the Bankruptcy Court failed to consider any evidence which was presented, or any other error.

Clearcom also seeks to overturn the Final Enforcement Order and the Reconsideration Order, asserting that the Bankruptcy Court ignored "facts and law" by allowing the transfer of SIC's interest in License 372 to HTI. Clearcom's appeal, however, only points to alleged deficiencies in the Marshal Sale – a sale ratified through a 2020 court order that was never appealed. Clearcom's arguments are thus impermissible, belated collateral attacks on the Bankruptcy Court's prior Sale Orders. Even if Clearcom's arguments were timely, however, they are not supported by the underlying documents and the record on this case. There is thus nothing which reflects that the Bankruptcy Court abused its discretion in reviewing its own prior Sale Orders and confirming, in the Final Enforcement Order, that HTI had properly acquired SIC's interests in License 372 through the Sales.

## ARGUMENT

### A.    The Contempt Motion and Contempt Order

In addition to substantive briefing regarding the three Appealed Orders, the Court has asked the parties to address three specific points described in its February 13, 2023 minutes for this case. *See* ECF 23. Each of these items are

addressed in turn below.

               *i.*     *The defining of a "relevant proceeding" under Ritzen*

In the case of *Ritzen Grp., Inc. v. Jackson Masonry, LLC,* the bankruptcy court denied a motion for relief from the automatic stay filed by creditor Ritzen Group, Inc.  140 S. Ct. 582, 587 (2020).  The motion sought stay relief to allow Ritzen's lawsuit, pending in Tennessee state court for breach of a land-sale contract, to move forward.  *Id.*  Ritzen did not appeal that disposition, but proceeded to file a proof of claim against the bankruptcy estate to pursue that same breach of land-sale contract claim.  *Id.*  The bankruptcy court adjudicated the merits of the breach of contract dispute, and found that Ritzen had been the one who breached the contract, not the debtor.  *Id.*  The bankruptcy court thus disallowed Ritzen's claim against the bankruptcy estate.  *Id.* at 588.  Ritzen appealed, challenging both (1) the bankruptcy court's order denying stay relief, and (2) the resolution of its breach of contract claim.  *Id.*  The district court rejected Ritzen's appeal of the stay relief denial order as untimely, as it had not been filed within fourteen days after the bankruptcy court's denial of stay relief.  *Id.*  The Sixth Circuit affirmed, as did the Supreme Court.  *Id.; see also id.* at 592.

In *Ritzen,* the Supreme Court compared the case with a prior case addressing finality, *Bullard v. Blue Hills Bank,* where the rejection of a proposed plan was not deemed final.  *Id.* at 588.  The Supreme Court found that an order <u>approving</u> a

proposed plan would have been final and appealable, as it would have "alter[ed] the status quo and fix[ed] the rights and obligations of the parties," but an order denying a proposed plan was not, because it left the parties' respective rights and obligations "unsettled." *Id.*

The Contempt Order here undoubtedly "alter[ed] the status quo and fix[ed] the rights and obligations of the parties" in connection with the Spare Reels. There were no further issues to be decided regarding the ownership of the Spare Reels; the Bankruptcy Court here had examined the evidence presented and issued a determination that it did not credibly believe that Clearcom, instead of SIC, owned the Spare Reels. Having determined that the Spare Reels had belonged to SIC, and not Clearcom, and having confirmed that the Spare Reels constituted Transferred Assets under the 363 Sale, the Bankruptcy Court imposed upon SIC the obligation to turn over the Spare Reels to HTI no later than April 25, 2022. *See* Bankr. ECF 537 (Initial Enforcement Order) at § E; Bankr. ECF 700 (Contempt Order) at ¶¶ 3, 5. Unlike in *Bullard,* there were no "rights and obligations" left "unsettled" in connection with the Spare Reels.

In *Ritzen*, the Supreme Court found that the bankruptcy court's order on the stay relief motion "disposed of a procedural unit anterior to, and separate from, claim-resolution proceedings." 140 S. Ct. at 589. The stay relief motion had initiated a "discrete procedural sequence, including notice and a hearing." *Id.* The

denial of the stay relief motion was not a "dispute over minor details," it had "large practical consequences," and determined whether the creditor could "isolate its claim from those of other creditors." *Id.* at 590.

Similarly, the Contempt Order here "disposed of a procedural unit" separate from both the Initial Motion to Enforce and the Main Motion to Enforce. The filing of the Contempt Motion initiated a "discrete procedural sequence," including notice and a hearing, to enforce the turnover of the Spare Reels. Notably, each one of these three motions had separate Notices of Motion and Notices of Hearing filed, and SIC also filed separate oppositions in connection with each of these three motions. *See* Bankr. ECF 459, 460, 480, 634, 636, 637, 642, 668, and 695. The Contempt Order conclusively determined the question of ownership of the Spare Reels and required SIC to turn those assets over to HTI. This determination plainly had significant practical consequences for both parties.

      *ii.    Sanctions, finality, and the termination of a procedural unit separate from the remaining bankruptcy case.*

Clearcom hangs its hat on the fact that sanctions were never actually imposed on SIC to support its position that the Contempt Order was an interlocutory order. *See* Opening Br. at 18-19. HTI does not dispute that there exists a line of case law, which the Court cited in its minutes, holding that a contempt order is not final and appealable until sanctions are actually awarded.

The specific ruling from those cases does not conflict with, but is inapplicable to, the present case. The Contempt Order did not actually award sanctions against SIC; it contained a provision which stated that a daily monetary sanction against SIC in the sum of $5,000 <u>would be</u> imposed from April 26, 2022 until such time as SIC turned the Spare Reels over to HTI. Bankr. ECF 700 at ¶ 5. This provision had been inserted to "secure compliance" with this Contempt Order, but the award of any actual sanctions remained subject to the further order of the Bankruptcy Court. *Id.* Because the Spare Reels were turned over to HTI prior to April 26, 2022, however, no sanctions were granted. In other words, the contempt had been purged.

A long line of precedent holds that once a civil contempt order has been purged, no live case or controversy remains for adjudication. *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir. 1980) (citing cases). Accordingly, where no sanctions have accrued because the party has purged the contempt, the appellate court lacks jurisdiction to review the contempt finding. *Fed. Trade Comm'n v. Cardiff*, 830 F. App'x 844, 845 (9th Cir. 2020); *In re Chase Bank USA, N.A. Check Loan Cont. Litig.*, 607 F. App'x 737, 738 (9th Cir. 2015).

There exists no opportunity for sanctions to ever be issued once contempt has been purged. The entry (or non-entry) of an eventual sanctions order thus can no longer be the benchmark for whether the order is final. Here, where the Court

is faced with the unusual situation in which SIC's contempt is purged but a third party, Clearcom, wishes to appeal the finding of contempt, there must be a reasonable constraint on the time in which the appeals period lapses. To hold otherwise would mean that such a challenge could be made only after the bankruptcy case ends – which would entirely ignore the cases finding that resolutions of discrete issues in bankruptcy cases should be immediately appealed. *See, e.g., Ritzen,* 140 S. Ct. at 587 (discussing why the ordinary understanding of "final decision" is not attuned to the "distinctive character of bankruptcy litigation").

### iii. *Avoiding duplicity in the appellate process*

In *Bullard,* the Supreme Court rightfully noted that the "pertinent proceeding" – or, in the case of *Ritzen,* the discrete "procedural unit" – could not be defined so narrowly that the requirement of finality would no longer be a "meaningful constraint" on appellate review. 575 U.S. 496, 504 (2015). At the same time, the desire to avoid "slicing" the case "too thin[ly]" (*Ritzen*, 140 S. Ct. at 590) does not mean that appeals of similar or related subject matter can simply be grouped together. In *Ritzen,* the Supreme Court held that finality rested solely on whether the order "terminate[d] a procedural unit separate from the remaining case, not whether the bankruptcy court ha[d] preclusively resolved a substantive issue." *Id.* at 591 ("It does not matter whether the court rested its decision on a

determination potentially pertinent to other disputes in the bankruptcy case, so long as the order **conclusively resolved** the movant's entitlement to the requested relief.") (emphasis added).

The Contempt Order here, which undisputedly resolved HTI's ownership of the Spare Reels, cannot reasonably be tied to the Main Motion to Enforce or the resulting Final Enforcement Order. While both the Initial Motion to Enforce and the Main Motion to Enforce addressed enforcement of the 363 Sale Order, the Main Motion to Enforce did not, in any way, implicate the Spare Reels or the ownership or turnover thereof. The availability of appellate review for SIC or for Clearcom in connection with the Contempt Order, and the statutory time limit imposed on a request for such review, cannot hinge upon whether <u>HTI</u> files a subsequent motion to enforce a different aspect of the 363 Sale Order.[6]

In *Bullard,* the rejection of a proposed plan was not final, because no bankruptcy plan had yet been approved. 575 U.S. at 503. The Supreme Court analogized it to a car buyer "declining to pay the sticker price" as part of the purchasing negotiations between the buyer and the seller. *Id.* ("It ain't over till it's over.") In *Vylene Enterprises,* the district court order vacating the bankruptcy court's judgment and remanding the case to the bankruptcy court for disposition

---

[6] Indeed, still today, HTI could file a third motion to enforce in the Bankruptcy Court, requesting adjudication of another aspect of the 363 Sale Order, but that filing would not automatically transform the Final Enforcement Order into an interlocutory one.

was also not final, as the district court order did not issue any determinations that "impair[ed] . . . property rights." 968 F.2d 887, 896 (9th Cir. 1992). In both of those cases, the rights and obligations of the parties were still unsettled: in *Ritzen,* that "settled" state would not be reached until the bankruptcy plan had been approved; in *Vylene,* until those remanded proceedings were completed.

Here, the Contempt Order marked the final resolution of the rights and obligations of the parties in connection with the Spare Reels. The issue was definitively settled, and property rights had been decided: SIC was required to turn the Spare Reels over to HTI, and did in fact do so. (Under the Supreme Court's car-buyer analogy, the car had been purchased, taken home, and was already being used for running errands). The fact that the same parties were still litigating their respective rights and obligations in connection with a different asset – SIC's interest in License 372 – is not relevant to the determination of whether the "procedural unit" regarding the Spare Reels had been terminated.[7] Accordingly, because the Contempt Order had fully disposed of the procedural unit relating to the Spare Reels, it was a final and immediately appealable order. The present appeal by SIC of the Contempt Order is thus untimely.

---

[7] Clearcom asserts that portions of the relief sought by the Initial Motion to Enforce was denied "on the grounds that the existing record was insufficient for the court to make certain determinations." Opening Br. at 20. This is correct, but the Bankruptcy Court's denial was not applicable to the Spare Reels (and other equipment), where the relief had been granted in favor of HTI in the Initial Enforcement Order.

**B.    The Bankruptcy Court imposed a requirement upon SIC to turn over the Spare Reels – not Clearcom.**

Clearcom asserts that the Bankruptcy Court exceeded its authority and committed error by ordering the turnover of Clearcom's Spare Reels to HTI. Opening Br. at 21.  But this is the exact opposite of what the Bankruptcy Court did. The Bankruptcy Court reviewed and weighed the relevant evidence submitted by the parties, as well as the facts in the record, and determined that SIC owned the Spare Reels, not Clearcom.  Tr. Hr'g (April 18, 2022) at 25:20-23 ("There's plenty of evidence that it belongs to Sandwich Isles [Communications], probably most persuasively the billing and shipping records that shows it was purchased and consigned to Sandwich Isles [Communications].")  The Bankruptcy Court found that SIC's declaration, which was submitted as supposed proof that the Spare Reels were owned by Clearcom, was not only inadmissible but also not credible.  *Id.* at 25:16-19 ("I think it's correct to point out that the [SIC] declaration isn't under penalty of perjury and, therefore, couldn't be considered. But even if it were, it's really not believable...")  Based on the admissible evidence presented to the Bankruptcy Court, it was not clear error for the Bankruptcy Court to conclude that the Spare Reels were owned by SIC.

Prior to the Motion for Contempt, the Bankruptcy Court had also already confirmed that the Spare Reels had been obtained by the Trustee through the

Marshal Sale and then sold to HTI through the 363 Sale. *See* Bankr. ECF 537 (Initial Enforcement Order) at 11 (confirming that the Spare Reels, along with other spare parts and equipment, undoubtedly constituted "Transferred Assets" under the 363 Sale Order). Accordingly, the Contempt Order required SIC to turn the Spare Reels over to HTI. *See* Bankr. ECF 700 (Contempt Order) ¶ 3 ("**SIC shall forthwith turnover** to HTI…"); *id.* ¶ 5 (imposing a daily monetary sanction against SIC from April 26, 2022 "until such time as **SIC turns over** the Spare Reels to HTI.") (emphasis added). The Bankruptcy Court did not impose any turnover requirement on Clearcom or threaten to impose any sanctions on Clearcom.[8]

The Bankruptcy Court undoubtedly had jurisdiction regarding the dispute over the Spare Reels[9] – it had presided over and ruled on the merits of the Trustee's AP litigation, which resulted in a $256 million judgment against SIC that was later satisfied through the Marshal Sale. The Trustee then purchased certain of

---

[8] The Contempt Order only requires Clearcom, along with other SIC affiliates, to refrain from moving, removing, destroying, altering, harming, or tampering with any of the Spare Reels and to cooperate, and not resist, interfere, or fail to take any action in connection with, any turnover of the Spare Reels by SIC to HTI. *See id.* ¶ 4.

[9] Throughout the brief, Clearcom makes brief references to how the Bankruptcy Court lacks jurisdiction over itself and SIC because they are not debtors. *See, e.g.,* Opening Br. at 7, 14, 19, 22. This is a grossly oversimplified, and fundamentally incorrect, view of bankruptcy jurisdiction. Bankruptcy courts have *in rem* jurisdiction over all property, wherever located, of the debtor, and of all property of the estate. 28 U.S.C. § 1334(e)(1). Bankruptcy courts also have subject matter jurisdiction over all proceedings arising under, arising in, or "related to" cases under title 11. 28 U.S.C. § 1334(b). This includes "causes of action owned by the debtor," such as the ones pursued by the Trustee through the Trustee's AP lawsuit which resulted in the Marshal Sale. *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 5 (1995).

SIC's assets, including the Spare Reels, at that Marshal Sale. At no time did the Bankruptcy Court take any action, or commit any error, with respect to any of Clearcom's assets.[10]

**C.     Each of Clearcom's attempts to show that SIC's interest in License 372 was not acquired by the Trustee through the Marshal Sale lack merit and are untimely collateral attacks on the Sale Orders.**

> *i.     Neither the Trustee, nor the DHHL, ever indicated that the Trustee did not acquire SIC's interest in License 372 through the Marshal Sale.*

Clearcom raises two arguments to buttress its position that SIC's interest in License 372 was never obtained by the Trustee through the Marshal Sale, but it is readily apparent that both of these arguments lack any support within the language of the underlying documents.

The first argument is one which SIC and Waimana have both raised in their opening briefs appealing the Final Enforcement Order and Reconsideration Order: that the language in an exhibit to the MRA is "clear that SIC did not convey to

---

[10] To the extent Clearcom seeks to challenge the Bankruptcy Court's factual determination that the Spare Reels belonged to SIC, there is no admissible evidence in the record regarding Clearcom's ownership of the Spare Reels – and Clearcom is not permitted to present any such evidence now, as papers not filed with the underlying court or admitted into evidence by that court are not part of the record on appeal. *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.,* 289 F.3d 589, 594 (9th Cir. 2002). The SIC Parties, which are all closely affiliated entities, were likely playing a "shell game" regarding the true ownership of the Spare Reels. The Bankruptcy Court remarked that Clearcom's assertion of ownership, having arisen "all of a sudden . . . at this late date," (which contradicted SIC's prior statements, as well as SIC's billing and shipping records) was "a little bit too convenient." Tr. Hr'g (April 18, 2022) at 25:20-24. Accordingly, it was not clear error for the Bankruptcy Court to determine, based on the admissible evidence presented and the record in the case, that the Spare Reels were owned by SIC.

Paniolo" SIC's interest in License 372. Opening Br. at 22. HTI has addressed this argument's deficiencies in its opposition briefs to SIC's appeal and Waimaina's appeal, and incorporates those responses herein to avoid unnecessarily duplicity: HTI refers the Court to Case No. 22-426, ECF 35 at 18-19, and Case No. 22-427, ECF 23, at 20-21.

The second argument raised by Clearcom is that the "DHHL confirmed to the Bankruptcy Court that HTI needed its own license to lawfully operate on the Hawaiian Home Lands." Opening Br. at 23. The DHHL's pleadings, however, actually confirm the exact opposite.

Clearcom cites to ECF 341 and ECF 432 on the Paniolo Bankruptcy docket. The pleading at ECF 341 was filed by the DHHL in connection with the Trustee's motion seeking authorization for the 363 Sale to HTI. Contrary to Clearcom's position, this pleading <u>expressly</u> confirmed that SIC's interest in License 372 <u>had</u> been executed upon and sold to the Trustee:

> "On February 4, 2020, a Certificate of Execution was entered certifying that the U.S. Marshal executed upon all of the right, title, and interest of, inter alia, certain personal property assets of SIC (the "A.2 Assets"). The inventory of A.2 Assets identifies buildings, manholes, conduits, subducts, and other fixtures located on Hawaiian Home Lands. **The inventory of A.2 Assets also included SIC's interest in License Agreement No. 372 issued by DHHL** to build, construct, repair, and maintain a telecommunications network on Hawaiian Home Lands ("License No. 372").

Bankr. ECF 341 at 4 (emphasis added) (internal citations omitted).

This pleading does state that HTI would "need to acquire a new license for the use of the Hawaiian Home Lands upon which certain A.2 Assets are located." *Id.* at 4-5. The reason underlying this statement, however, was not because the DHHL believed SIC's interest in License 372 had not been acquired through the Marshal Sale, but rather because License 372 was in default at that time. *Id.* at 2, 5 (noting that the assets were on DHHL's lands "pursuant to a license, which is [in] default.") This is confirmed in the pleading itself, which states that the "DHHL confirms what is noted by the Trustee in the Motion to Approve Sale," and cites to portions of the Trustee's motion at ECF 313 and 313-3. *See id.* at 4-5. The portions cited by the DHHL are the exact portions where the Trustee has pointed out that License 372 was in default. *See* Bankr. ECF 313 at 24-25 ("…pursuant [to] a DHHL license which is [in] default"); Bankr. ECF 313-3 at 11-12 (same).

The second DHHL pleading cited by Clearcom in support of its position, ECF 432, also makes no indication that SIC's interest in License 372 was not acquired by the Trustee; it expressly stated the opposite. The DHHL pleading cites to its prior filing in noting that a new license would be required (due to the default in License 372), and proceeds to (1) update the Bankruptcy Court as to the status of their negotiations with HTI surrounding a new license; (2) inform the Bankruptcy Court that SIC's cries of exclusivity surrounding License 372 were wholly misguided; and (3) request that the Bankruptcy Court ensure that "SIC is

not permitted to take any action which jeopardizes the Paniolo network, including failing to cooperate in the prompt and lawful transfer of assets to Buyer [HTI]."

*See generally* Bankr. ECF 432. The DHHL states unequivocally:

> "[I]t is DHHL's understanding that **any interest of SIC in the Paniolo assets being acquired by Buyer, including that portion of License 372 which comprises part of the Paniolo assets, has been extinguished** by the bankruptcy proceedings . . . SIC has apparently indicated that, post-closing, it will attempt to maintain 'dead-hand control' via the provisions of License 372."

Bankr. ECF 432 at 6, 7 (emphasis added).

> The DHHL's clear stance was reinforced in a later filing, which stated:

> "[T]o the extent that SIC held any rights in the Transferred Assets, or the premises on which the Transferred Assets are located, those rights were definitively extinguished and terminated by the Marshal Sale and the 363 Sale. SIC has **no existing rights under License Agreement No. 372** ("License 372") that would permit it to contravene this Court's prior orders and interfere with HT's access to, and operation of, the Transferred Assets . . ."

Bankr. ECF 669 (DHHL Position Statement regarding the Main Motion to Enforce) at 3 (emphasis added). This later pleading went on to describe for the Bankruptcy Court how the wrongful conduct of the SIC Parties violated federal law, "frustrate[d] the operations of DHHL, [and] jeopardize[d] the continuity of vital services to DHLL's beneficiaries." *See generally id.*[11]

Clearcom's notion that the DHHL "confirm[ed] . . . that the Trustee did not

---

[11] The DHHL's strong stance against the SIC Parties appears to be why SIC, in its opening brief of its parallel appeal, has alleged that the DHHL is violating its fiduciary duties, and has urged for this Court to "disregard" the DHHL's views. *See* Case No. 22-426, ECF 32 at 19-21.

obtain License 372" (*see* Opening Br. at 27) is entirely baseless. Each of the DHHL's pleadings have undisputedly stated the exact opposite. The pending appeals by the SIC Parties appear to be nothing more than a continuation of the "dead-hand control" tactics referenced by the DHHL. *See* Bankr. ECF 432 at 7. The Bankruptcy Court did not commit error when it reviewed its own prior orders and confirmed that SIC's interest in License 372 had been acquired by the Trustee through the Marshal Sale, and subsequently by HTI through the 363 Sale.

        *ii.*     *The SIC Parties' arguments that the Bankruptcy Court violated state law in transferring SIC's interest in License 372 to HTI are not only belated, but also wholly unmeritorious.*

        Clearcom proceeds to make two further arguments in support of its position that the Trustee could not possibly have obtained SIC's interest in License 372 through the Marshal Sale: (1) state law was violated when SIC's interest in License 372 was transferred to a non-native Hawaiian (in Section V of its brief); and (2) real estate levying procedures had not been complied with in connection with the transfer of SIC's interest in License 372 (in Section VI). These are the same arguments SIC has made in its own pending appeal of the Final Enforcement Order and Reconsideration Order. HTI has addressed these argument's deficiencies in its opposition brief to SIC's appeal, and incorporates them by reference herein so as to avoid unnecessary duplicity once again: HTI refers the Court to Case No. 22-426,

ECF 35 at 21-24 (addressing the lack of substantive merit in these arguments) and *id.* at 13-15 (addressing the untimeliness of these arguments). The failings in each of the arguments raised by Clearcom apply across the board to all the SIC Parties.

      *iii.*    *Clearcom's discussion regarding the alleged enforcement of Settlement Agreement is inapplicable to HTI.*

      Clearcom's remaining argument states, in Section VII of its brief (and addressed briefly in the last paragraph on page 21), that the SIC Parties' various commitments in the Settlement Agreement "cannot be enforced by HTI." Opening Br. at 27. This has never been in dispute: HTI did not assume the MRA through the 363 Sale, and HTI has never sought to enforce any commitments in the Settlement Agreement against the SIC Parties.[12]

      HTI's consistent position has been that it acquired SIC's interest in License 372 from the Trustee through the 363 Sale, who acquired it from SIC through the Marshal Sale. The Bankruptcy Court did not, as Clearcom suggests, "allow[] Appellee to benefit from the MRA and its schedules when it was clearly not a party to the MRA" (*see* Opening Br. at 28). The Bankruptcy Court merely confirmed

---

[12] SIC, on the other hand, <u>has</u> attempted to bind HTI to the terms of the Settlement Agreement. This issue was litigated in the Bankruptcy Court in the Settlement AP. The Bankruptcy Court eventually found that (i) SIC could not "enforce any of these agreements" against HTI, because HTI was never a party to these agreements (*see* Tr. Hr'g (January 14, 2022) at 17:5 – 18:16); and also found that (ii) while the Trustee had breached the terms of the Settlement Agreement in not requiring HTI to assume the MRA through the 363 Sale, the Trustee's breach was excused in light of multiple material breaches by SIC that had occurred prior to the 363 Sale (*see id.* at 21:24 – 22:3). The Bankruptcy Court's final judgment in this adversary proceeding was issued on February 21, 2022, and was never appealed. *See* Settlement AP, ECF 63.

that SIC's interest in License 372 had been acquired by HTI through the Sales. *See* Bankr., ECF 729 (Final Enforcement Order) ("**Through the Marshal Sale and the 363 Sale, HTI has properly acquired** the assets that permit operation of the Paniolo Network, including, without limitation, full rights of access to the Paniolo Premises, **including those certain portions of the 372 License pertaining to the Paniolo Network and/or the Paniolo Premises that were formerly held by SIC.**") (emphasis added) (internal parentheticals omitted). Having acquired the asset, HTI was free to use it subject to the DHHL's oversight and regulations.

The Bankruptcy Court did not commit any error in making a factual determination that the Spare Reels had belonged to SIC, and not Clearcom, particularly when the SIC Parties failed to present any credible, admissible evidence of Clearcom's ownership. The Bankruptcy Court also did not abuse its discretion in reviewing its prior orders to confirm that the Spare Reels, and SIC's interest in License 372, had been properly acquired by the Trustee through the Marshal Sale, and then later sold to HTI through the 363 Sale. As a result, the Bankruptcy Court's entries of the Contempt Order and the Final Enforcement Order enforcing the transfers of those assets were not made in error.

## CONCLUSION

For the foregoing reasons, HTI respectfully requests that the Court affirm the Contempt Order, the Final Enforcement Order, and the Reconsideration Order.

DATED: Honolulu, Hawaii, April 24, 2023.

PETTIT LAW HAWAI'I LLLC

_____/s/ Ted N. Pettit_____
TED N. PETTIT
and
MORGAN, LEWIS & BOCKIUS LLP
ANDREW J. GALLO
MELISSA Y. BOEY

Attorneys for HAWAIIAN TELCOM, INC.